IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.    2:07-CR-136-MHT    |
| | ) | |
| KEITH ANDERSON | ) | |
| | ) | |

**ADDENDUM TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF ON
THE APPLICATION OF *DEAL v. UNITED STATES***

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and files an addendum to its supplemental brief regarding the application of *Deal v. United States*, 508 U.S. 129 (1993), to the "prior conviction" language in 18 U.S.C. § 2252A(b).

The undersigned attorney recently was made aware of the following:

- The issue at hand has already been presented to this Court in the case of *United States v. Michael David King* (2:05cr301-WHA);

- A ruling from the Honorable Senior Judge W. Harold Albritton III in that case held directly contrary to the position of the United States in this case (*see* attached Sentencing Tr. at 11-14);

- The United States subsequently sought and obtained approval from the Solicitor General of the United States to appeal that decision for the reasons stated in the Government's earlier briefs in this case; and

- The issue and the arguments put forth by the Government in this case are currently before the Eleventh Circuit Court of Appeals in the case of *United States v. Michael David King*, 07-11808.

1

2

      This Court should also be advised that the undersigned attorney is unaware of any other federal case that directly speaks to this issue, as it appears to be a matter of first impression not only in the Eleventh Circuit, but also throughout the country.

      Respectfully submitted,

      LEURA G. CANARY
      UNITED STATES ATTORNEY

      */s/ Nathan D. Stump*
      NATHAN D. STUMP
      Assistant United States Attorney
      United States Attorney's Office
      131 Clayton Street
      Montgomery, AL  36104
      Tel:  (334) 223-7280
      Fax:  (334) 223-7560
      Email:  nathan.stump@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 19, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to defense counsel Keith Rodgers, Esq. and Stephen NeSmith, Esq.

      Respectfully submitted,

      */s/Nathan D. Stump*
      NATHAN D. STUMP
      Assistant United States Attorney
      131 Clayton Street
      Montgomery, AL  36104-3429
      Tel: (334) 223-7280
      Fax: (334) 223-7560
      Email: nathan.stump@usdoj.gov

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE MIDDLE DISTRICT OF ALABAMA

 3                       NORTHERN DIVISION

 4

 5  UNITED STATES OF AMERICA

 6      vs.                    CASE NO.:   2:05cr301-WHA

 7  MICHAEL DAVID KING,

 8          Defendant.

 9

10

11
                     * * * * * * * * * *
12
                       SENTENCING HEARING
13
                     * * * * * * * * * *
14
            BEFORE THE HONORABLE W. HAROLD ALBRITTON, UNITED
15
    STATES DISTRICT JUDGE, at Montgomery, Alabama, on Tuesday,
16
    April 10, 2007, commencing at 2:28 p.m.
17
    APPEARANCES:
18
    FOR THE GOVERNMENT:      Mr. Andrew O. Schiff
19                           Mr. John T. Harmon
                             Assistant United States Attorneys
20                           OFFICE OF THE UNITED STATES ATTORNEY
                             One Court Square, Suite 201
21                           Montgomery, Alabama  36104

22  FOR THE DEFENDANT:       Mr. Jeffery C. Duffey, Attorney at Law
                             LAW OFFICE OF JEFFERY C. DUFFEY
23                           600 South McDonough Street
                             Montgomery, Alabama  36104
24
            Proceedings reported stenographically;
25             transcript produced by computer.
```

```
 1        (The following proceedings were heard before the Honorable
 2        W. Harold Albritton, United States District Judge, at
 3        Montgomery, Alabama, on Tuesday, April 10, 2007, commencing
 4        at 2:28 p.m.:)
 5            THE COURT:  All right.  I'll call the case of United
 6  States of America versus Michael David King.  Is the government
 7  ready to proceed?
 8            MR. SCHIFF:  Yes, Your Honor.  Good afternoon.
 9            THE COURT:  All right.  Mr. Schiff.  Mr. Harmon.
10            MR. HARMON:  Good afternoon, Your Honor.
11            THE COURT:  Is the defendant ready to proceed?
12            MR. DUFFEY:  Yes, sir.
13            THE COURT:  Mr. Duffey.
14            MR. DUFFEY:  Yes, sir.
15            THE COURT:  Come forward, please.
16            Swear in the defendant.
17            THE CLERK:  Would you raise your right hand, please.
18        (The defendant is sworn)
19            THE COURT:  All right.  Mr. King, have you, and
20  Mr. Duffey, have you, as defense counsel, reviewed the
21  presentence report, including any revision that may have been
22  made after the initial disclosures?
23            MR. DUFFEY:  Yes, sir.
24            THE COURT:  Have you, Mr. King?
25            THE DEFENDANT:  To the best of my knowledge, yes, sir.
```

3

1    THE COURT: All right. The presentence report shows
2 two objections. One is that the defendant states that he's not
3 able to pay a fine, and I understand that and will take it into
4 consideration. I don't view that as -- I don't view that as
5 necessary to the sentence, because I don't think that it's
6 actually an objection. The profile indicates that he could be
7 able to pay a fine on liquidation of his assets, but whether he
8 should be is another matter. And I'll take all this into
9 consideration on whether a fine should be imposed, but I
10 overrule that objection.
11    MR. DUFFEY: Yes, sir.
12    THE COURT: Now, the first objection says that the
13 defendant stated that he did not access the pornographic
14 information in his dorm room; the information was already on his
15 computer, which was located in his dorm room. I simply don't
16 understand that objection.
17    MR. DUFFEY: Judge, if I may, it's somewhat
18 complicated. And this was testified about at the suppression
19 hearing, I believe, by --
20    THE COURT: I recall that --
21    MR. DUFFEY: -- Agent LaMar. The proxy server, as I
22 understand the testimony, can determine whether or not any
23 computer on the network has accessed the Internet or the Web.
24 Agent LaMar did a proxy search to see if his computer had
25 accessed the Internet. And she had specific dates that she put

4

1 in her statement, which was introduced into evidence. And in
2 her statement, she said that she determined that there was no
3 activity that violated General Order Number 1. There was no --
4 no violation at all of accessing the Internet from the computer
5 that was in the -- the actual dorm room. As I understand the
6 testimony, Agent LaMar then searched the individual computer
7 that was sitting in the dorm room, the laptop computer, and got
8 into the hard drive of the computer. There are also proxy --
9 proxy logs?
10    THE DEFENDANT: No. Internet history logs and file
11 access logs.
12    MR. DUFFEY: Okay. There are other logs on the
13 computer itself that will show everything that was downloaded,
14 searched, whether or not the Internet was accessed. That's when
15 she determined that access had been made and files had been
16 saved previously, but it had not been done from that location.
17 These matters were brought into the room, as I understand the
18 evidence.
19    THE COURT: All right. Well --
20    MR. DUFFEY: In other words, it was a search of the
21 computer. And this is part of our -- the reason I brought this
22 up, we're trying to be consistent with what we've alleged in our
23 motion to suppress -- is that the actual search of the computer
24 is where that revealed that information. It was not of the
25 proxy logs itself.

5

1    THE COURT: Well, since the defendant has pleaded
2 guilty to one and three, as I understand it, then, this
3 objection must be to simply preserve your position for appeal on
4 the motion to suppress issue. It doesn't make any difference in
5 sentencing, does it?
6    MR. DUFFEY: That's correct. That's correct, Your
7 Honor. That's the only reason we did it, because I didn't want
8 to come up with something on appeal and then someone go back to
9 the presentence report and say, well, it's different here and
10 you didn't object to it. And I just want to make sure we're
11 consistent in our argument. It doesn't make a difference in the
12 sentencing, as I understand it.
13    THE COURT: All right. But I'm not sure what part of
14 the presentence report you're objecting to, then. What is
15 the --
16    MR. DUFFEY: Well, it was -- if the Court will just
17 bear with me just one second.
18    THE COURT: All right.
19    PROBATION OFFICER: It's going to be in paragraph
20 ten --
21    THE COURT: Paragraph ten?
22    PROBATION OFFICER: -- of the offense conduct.
23    THE COURT: All right.
24    PROBATION OFFICER: Line 7.
25    THE COURT: Okay. But is it the sentence, she also

6

1 stated that the defendant accessed this information from a
2 computer located within his dorm room on base, in paragraph ten?
3    MR. DUFFEY: Yes, sir. She also stated that the
4 defendant accessed this information from a computer located
5 within the dorm room. The way I understand it, that should have
6 read that Agent LaMar is the one who accessed it into the dorm
7 room. There was never an allegation that Mr. King used the
8 computer in the dorm room to access information through the
9 server.
10    THE COURT: Now, the probation officer, Ms. Caple,
11 responded that that statement was taken from a report of
12 investigation and reiterated in an FBI report.
13    Ms. Caple, having heard the objection just stated, do
14 you have any comment on that?
15    PROBATION OFFICER: Only to say that I am reiterating
16 information in official government documents.
17    THE COURT: All right.
18    MR. DUFFEY: Judge, may I?
19    THE COURT: Yes.
20    MR. DUFFEY: What she said is correct. That statement
21 does say that. But Defendant's Exhibit #2, which was introduced
22 at the suppression hearing, was the statement of Agent LaMar
23 herself. And in her statement, about a third of the way down,
24 if I may just quote it, it says, I ran the proxy logs for his
25 user name -- meaning him; it's his -- for 4 January '03, 8

7

1  February '03, 11 February '03, 12 February '03, 13 February '03,
2  17 February '03, and 18 February '03. I did a thorough review
3  of those logs and didn't find anything that violated GO-1, which
4  is General Order 1.
5       Then she goes on to talk about searching his individual
6  computer itself, which is different from the proxy logs. The
7  proxy log shows if a computer on the network has accessed the
8  Internet, any computer, and it did not show his computer had
9  accessed the Internet for anything that would violate General
10 Order Number 1, which would be pornography.
11      THE COURT: All right.
12      MR. DUFFEY: Sergeant O'Brien was her -- was the
13 criminal investigator who did the overall investigation and
14 report. So he did a report based upon a review of the other
15 reports.
16      THE COURT: All right. Mr. Schiff, is there anything
17 you'd like to say about this?
18      MR. SCHIFF: Yes, Your Honor. I mean given that this
19 point really has nothing to do with anything material to
20 sentencing, I mean the government would stipulate that for
21 purposes of any appeal, the propriety of the search would be
22 based on -- not on the PSI, which is a later-prepared document,
23 but what was before the magistrate judge and the district court
24 at the time of that search -- excuse me. At the time of that
25 ruling.

8

1       THE COURT: All right. Mr. Duffey, do you want to
2  present any evidence or any further argument on this?
3       MR. DUFFEY: No, sir. No, sir. We just want to make
4  sure that we -- we didn't just let that go by in the event it
5  would cause a problem on the motion that we filed.
6       THE COURT: All right. Well, let me say two things
7  about this objection, then. The statement objected to will have
8  no effect on the sentence in this case. And I -- and to the
9  extent that that statement might in any way contradict the
10 testimony on which the decision was made to deny the motion to
11 suppress, I do not adopt that statement as part of the findings
12 of fact. Otherwise, the objection is overruled.
13      Anything further on that point, Mr. Duffey?
14      MR. DUFFEY: No, sir. No, sir.
15      THE COURT: All right. Then having made findings as to
16 those objections, I also have considered the government's motion
17 for an additional level downward for acceptance of
18 responsibility of three levels. I grant that motion and will
19 take that into consideration in setting the advisory guideline
20 range.
21      Having made findings to the objections, the Court finds
22 that the offense level is 30, the criminal history category is
23 I, the guideline range is from 97 months to 120 months, the
24 supervised release period is from five years to life, and the
25 fine range is from $15,000 to $150,000. This is before

9

1  consideration of whether or not there's a statutory minimum of
2  120 months under 18 U.S.C., Section 2252A(b)(2), based on
3  whether count one is a prior offense -- is a prior conviction,
4  rather, prior to count two.
5       I have reviewed the motion of the government or the
6  brief of the government, rather, the sentencing memorandum,
7  taking the position that this first offense, the offense to
8  which the defendant pleaded guilty of transporting child
9  pornography, as to whether that should be considered a prior
10 offense to count three, which is possession at some time later
11 of child pornography. I've read that memorandum, and I've read
12 the defendant's responsive memorandum. I've read the case and
13 the statutes and have considered all of that. If there's
14 anything further that the government wants to submit on that
15 issue, I'll hear from you.
16      MR. SCHIFF: No. Unless the Court has any questions,
17 the government would stand on its brief and the cases cited
18 therein.
19      THE COURT: All right. Mr. Duffey?
20      MR. DUFFEY: Judge, if I could just point out a couple
21 of things that's different in this case and the *Deal* case under
22 the gun charge, the 924 statute. The statutes are worded
23 completely different, and I think I put that in the memorandum.
24 In this statute, it's a but if there's a prior conviction, it's
25 to be enhanced. The other one says in the case of a second or

10

1  subsequent conviction.
2       It appears the Supreme Court at 508 U.S. 132 in the
3  *Deal* case gave several reasons why they found the way they did.
4  And one of them was -- and I'm looking at the second paragraph
5  on that page, and I'll quote the last sentence, if I may. And
6  this is dealing with 924(c)(1). It says, thus, if conviction in
7  924(c)(1) meant judgment of conviction, the provision would be
8  incoherent, prescribing that a sentence which has already been
9  imposed, the defendant's second or subsequent conviction, shall
10 be five or 20 years longer than it was.
11      In this case, they specifically say but if there's a
12 prior conviction, which is completely different. They're saying
13 there that it refers to the conviction itself as a second or
14 subsequent conviction. The pornography statute does not refer
15 to the same conviction. It says but if there is a prior
16 conviction. So we contend that's different than the *Deal* case.
17      It also, on page -- 508 U.S. at page 133 in the *Deal*
18 case, they also state that if they were to construe it any other
19 way, it would give the prosecution unreviewable discretion in
20 charging. They could either opt in or opt out. Under the
21 pornography statute, 2255A (sic), they do not have that
22 discretion because it's talking about a prior conviction, not if
23 this one is the second or subsequent.
24      They also talk about in that opinion at page 137
25 another reason is that if they didn't go with the interpretation

11

1  that the government maintained in the 924(c) case, that someone
2  could go out and just evade detection, you know, the fact that
3  they commit six robberies on six different days and then they
4  evade detection and continue doing that, and they get a benefit
5  that the statute really doesn't confer.
6       We don't have that in this case. You know, he was --
7  he was caught in Saudi Arabia. He was sent back. And some
8  three years later, they do a search of his home and find stuff
9  on his computer. He was not attempting to evade anyone.
10 Everybody knew where he was. It's different from a -- that type
11 of offense where you use a gun in a robbery.
12      So we contend that in looking at the facts -- and they
13 do state that they're looking -- in reviewing this case, they
14 say in the context at issue. Well, we -- we contend this is a
15 different context in looking at how you construe these -- these
16 terms. And it is our contention that a prior conviction means
17 that he must have previously been convicted of a crime before
18 that would occur.
19      THE COURT: All right. Well, this is a case of first
20 impression, and I understand the position taken by the
21 government in it that *Deal* should be interpreted to go farther
22 than was actually involved in that case and apply to the statute
23 and the language in this case, but I'm not willing to do that.
24 I've thought a lot about this, and I don't think that this
25 ten-year maximum -- minimum, mandatory minimum enhancement,

12

1  applies in this case, and I want to tell you why.
2       First, the language is different in the two statutes.
3  The present case under Section 2252A is not the same as what was
4  involved in *Deal*, Section 924, which referred to a second or
5  subsequent conviction. Here we're talking about a prior
6  conviction. The language is similar in the two statutes, but I
7  can't ignore that there are differences. And the basis for the
8  government's interpretation is a case interpreting a different
9  language, although similar, and to a different statute, which is
10 not similar.
11      To make that decision and that jump would require this
12 Court to stretch the *Deal* holding beyond what the Supreme Court
13 was faced with at that time and I think different from the
14 rationale that the Court used in making that determination. So
15 without something further from the Supreme Court, I don't think
16 that lower courts should be willing to stretch the *Deal*
17 precedent in cases outside of Section 924 unless we're dealing
18 with a case involving identical language.
19      The second reason is that the facts of this case, as
20 you point out, Mr. Duffey, differ significantly from the facts
21 in the *Deal* case. In the *Deal* case, we had a string of bank
22 robberies, the same type of thing, and all committed before he
23 was caught. They were all presented in one prosecution, and
24 they enhanced the defendant on the basis of it. And they say
25 that as a rationale that doing it otherwise would make -- of

13

1  saying you couldn't do it that way would just simply give the
2  prosecution too much discretion as to length of sentence by
3  being able to prosecute one at a time and that being different
4  from prosecuting them all together.
5       In this case, the facts are different. The defendant
6  was charged with transportation of child pornography, and he was
7  sent from Saudi Arabia back in 2003 as a result of that
8  investigation in which that was found. It was not until three
9  years later that he was actually prosecuted for that. I don't
10 know exactly where this fits into the analysis; but I would
11 point out that if the defendant had been prosecuted for that
12 first offense shortly after it was discovered in Saudi Arabia,
13 he would, in all likelihood, not have committed the second
14 offense because he would have been in prison and, after that,
15 unable to be involved with a computer. So without going into
16 the reasons for that or the motives or why there was delay --
17 there may well and probably was a substantial reason for that
18 other than just tactical -- it is quite different from the fact
19 situation in *Deal*.
20      So in summation, it would just -- it would stretch *Deal*
21 too far. The language -- the two languages themselves that
22 would favor the defense side of this would be the clear language
23 "prior sex conviction" in Section 3559 and "prior conviction" in
24 Section 2252A. The government urges that the definition given
25 in 3559 should make it different because the same definition was

14

1  not given in Section 2252A. But I don't find that that
2  overrides the clear language of "prior sex conviction" and
3  "prior conviction" being so similar that the mere fact that
4  there is not a definition in 2252A is not sufficient to say that
5  Congress intended for it to be different from the very similar
6  language of "prior sex conviction."
7       For all of those reasons, I find that the enhancement
8  is not due to be given. And I don't think there's a motion
9  pending on that; but to the extent that that might be, I would
10 deny it and I decline to hold -- and I hold that the ten-year
11 minimum, mandatory minimum sentence, does not apply in this
12 case.
13      Now, in determining a sentence that's reasonable and
14 appropriate in this case, I'll hear from you, Mr. Duffey, if you
15 have anything you'd like to say.
16      MR. DUFFEY: Yes, sir, Your Honor. If the Court would
17 consider that Mr. King is retired military prior to this, had an
18 unblemished record. He served honorably, honorable discharge
19 after 20 years, had no prior criminal history.
20      Also, the specific crime that he's charged with and
21 that he has pled guilty to involved possession of illegal
22 images, child pornography. And he admits to that and
23 understands he's going to be punished. But in this case,
24 there's no charge and no allegation that he ever did any type of
25 solicitation of a child. There is no evidence that he ever

15

swapped images with anyone else, sold images, or anything of that nature, which you see in a lot of these cases. His was merely possessing a great number of images. And so we contend that his case is somewhat different from a lot of people who come through the Court who are charged with violating 2252 -- or 55A, and that the Court consider that.

And also consider in regards to the fine that in fact he -- when he was arrested, he had a very good job. He has a computer specialty. He's an expert in that area. And when he was on supervised release, he had to work as a waiter at Applebee's. That's the only kind of job he could get. His wife had to take -- she works at Toys R Us and had to take a second job at McDonald's. They have a 15-year-old child who is in school. They're in a tremendous financial bind and would ask the Court -- I understand the Court will consider all that, but we would ask the Court not to impose a fine in this case.

There are some other recommendations. I don't know if I need to get into those now, but there are some things I would like to bring up regarding some recommendations about conditions that would be placed on him.

THE COURT: You can go ahead.

MR. DUFFEY: There are certain recommendations, one specifically is that he should be restricted and not to have any contact with any children under the age of 18. He has a 15-year-old son. And I just wanted to ask for clarification if

16

that applies to his child, because I'm sure there will be -- if the Court allows it, there will be telephone contact while he's in prison and possibly visitation contact. And when he is released at some point in the future, he'll be over 18; but at least while he's in prison, we would like to ask the Court for clarification that he be allowed to have contact with his son, who is under 18.

The last thing we would ask the Court to consider is the term of supervised release. And I believe it says five years to life. In this case, because of his situation and his background, his -- the fact that he served his country, the fact that he had never been in trouble before, and the fact that he will be subject to essentially a lifetime of registration as a sex offender both under federal law and state law, which are very restrictive -- he'll be restricted once he is released from prison, where he can live, have a special ID, things of that nature. And we would -- we would ask the Court to consider not imposing a lifetime of supervised release since he will already be under a great many different restrictions and ask the Court to impose a sentence of supervised release of ten years rather than life.

THE COURT: All right. Mr. King, is there anything you'd like to say?

THE DEFENDANT: No, sir.

THE COURT: All right. Mr. Schiff?

17

MR. SCHIFF: Yes, Your Honor. The government would request a sentence at or near the high end of the guideline range in this case. The government would rely on the number of the images, the nature of the images, and the repetitious nature of the conduct in this case.

In terms of the number of images, under the guide -- under the guidelines, the maximum you can get points for is 600 and over. In this case, the defendant is many, many times over that maximum number of images. I think that would -- well, I think that would even suggest a possibility of departure. The government has agreed to a sentence within the range, and the government feels that that is a factor suggesting the higher end of the range.

The nature of the images. It's summarized in paragraph 12. Leave it to say in open court that these are very nasty, nasty images involving young children in just horrific, horrific acts of violence.

And finally, in terms of the repetition of the conduct, this is a defendant who was caught, who knew he was caught, and notwithstanding that, returned to the United States and recommitted the same offense. And therefore, I think it is a defendant who is less likely to rehabilitate than others and, again, a factor that would support a sentence towards the upper end of the guideline range.

In terms of the -- the government would not object to

18

exempting the son from visits with -- to the conditions being set so that the son could visit him in prison.

In terms of lifetime supervised release, the government feels that the Court should impose such a term with supervised release. After the defendant is released from prison, there's always the possibility the defendant could move for a reduction, but there's no way to increase it up if that turns out to be appropriate under the facts. And the guidelines do recommend a lifetime term in cases such as this. Thank you.

THE COURT: All right. Well, I've looked very carefully at all the matters involved in this case, and I've considered all the factors in 18 U.S.C., Section 3553(a), as well as the advisory guidelines, the facts and circumstances surrounding this case, and the individual background of the defendant.

There are things that mandate against a minimum sentence in this case. I have considered as part of that the fact that the defendant was asked to leave Saudi Arabia in 2003 knowing that there was an investigation for possession of child pornography going on, knowing himself why that was and what he had taken to Saudi Arabia from here; but his activity continued in spite of that when he got back to this country to the extent that in 2006, he was found in possession of a substantial amount of child pornography still.

It strikes me along the lines of what Mr. Schiff was

19

1  suggesting that the range in this case would be the same if it
2  were a much less -- I don't want to say less serious, but less
3  voluminous, I guess, amount of evidence. It would be the
4  same -- the range would be the same in this case if Mr. King --
5  if there was only one minor who was prepubescent at the time.
6  Here the presentence report shows that the majority on the 12
7  CDs that were possessed by Mr. King, the majority -- I don't
8  know how many that was, but so certainly more than one -- were
9  prepubescent. So there were more than the minimum of that.
10      The range would have been the same if there had been
11 600 images of child pornography. Here, the presentence report
12 shows the fact that there were more than 30,000. At least 70 of
13 those people in there were -- victims were identified by sources
14 that were known by the federal government to be -- to identify
15 them as children.
16     And third, if any of the material that had been found
17 in the defendant's possession portrayed sadistic conduct or
18 other violence, if any of it did, the range would have been the
19 same. Here the presentence report and the facts in the
20 presentence report show that most of the videos in the
21 possession of the defendant depicted children bound with rope,
22 handcuffs, and blindfolded and engaged in sadistic sex acts, and
23 there were videos depicting rape and torture. All of those
24 things are considered by me to mandate a sentence higher than
25 the minimum sentence.

20

1      On the other hand, I have taken into consideration the
2  history and characteristics of the defendant and the amount of
3  time in his life that he's had no other offenses, and I've taken
4  into serious consideration his 20 years of honorable military
5  service.
6      Taking all of those things into consideration, it's my
7  determination that a sentence in the middle of the guidelines,
8  the recommended guidelines, would be reasonable in this case,
9  and it's -- and I'm going to impose a sentence of 108 months.
10     However, I am going -- because of all of the
11 exaggerated things that I have mentioned earlier, I've
12 determined that a sentence of supervised release for the rest of
13 your life, Mr. King, is appropriate in this case. You do have
14 other supervision, but the other supervision can be done in
15 conjunction with this supervision. And so I'm going to order
16 supervised release for a period of life.
17     As to a fine, although assets could be liquidated and a
18 fine paid, I don't find that to be appropriate. Defendant's
19 family is more in need of whatever resources there might be
20 available, and I'm not going to take those resources away from
21 the family.
22     As to the no contact with children under the age of 18,
23 I would make that to be no contact with children under the age
24 of 18 other than his son with approval of the Federal Bureau of
25 Prisons or the probation officer. Is that language agreeable to

21

1  the probation officer?
2      PROBATION OFFICER: Well, Your Honor --
3      THE COURT: Would that work?
4      PROBATION OFFICER: -- as they were discussing that
5  issue, I think the clarification is, is that this condition
6  would not kick in until he was released on supervised release.
7  So he's not even held by this condition for many years from
8  today.
9      THE COURT: Oh, that's correct. All right.
10     PROBATION OFFICER: So I don't even think that it needs
11 to be ruled on.
12     THE COURT: That is correct. It's not a requirement
13 during the time that the defendant would be in prison. That
14 would be simply a matter of Federal Bureau of Prisons' policy.
15     Do you agree with that, Mr. Duffey?
16     MR. DUFFEY: Yes. The reason I did, I wasn't sure when
17 the Bureau gets the presentence report if they would read
18 that -- or if they get the sentencing judgment, if they would
19 read that as saying he has no contact with his son. I just --
20 that's why I wanted clarification.
21     THE COURT: Well, it's not the intent of the Court for
22 that to have any effect on Federal Bureau of Prisons' policies
23 while the defendant is in prison. And it's correct that this
24 specific provision in here only applies when he's on supervised
25 release, which will be after the son is 15.

22

1      MR. DUFFEY: Yes, sir.
2      THE COURT: Mr. Schiff, do you agree with all that? Is
3  that --
4      MR. SCHIFF: Yes, Your Honor.
5      THE COURT: All right. Now, there also is a motion for
6  forfeiture in this case, and I understand that's -- is that a
7  part of the plea agreement as well?
8      MR. HARMON: Your Honor, I don't know if it's part of
9  the plea agreement. Mr. Duffey and I have worked together and
10 have resolved it. If the Court will recall, the United States
11 filed a bill of particulars listing certain items as being
12 subject to forfeiture pursuant to the terms of the indictment.
13 That was filed, Your Honor, on November the 21st of last year.
14 Mr. Duffey wrote me, and there were some items that were listed
15 on the bill of particulars that he contended were not subject to
16 forfeiture. After consultation with appropriate officials from
17 the government, we have agreed. Specifically, Your Honor, we
18 are asking the Court to strike items two, four, six, 15, number
19 17 through number 26, and 32 as no longer subject to
20 forfeiture. Your Honor, we have filed a motion for a
21 preliminary order of forfeiture. I don't -- I believe the Court
22 has it. If not, I have a copy --
23     THE COURT: I have received it. Did that delete those
24 numbers?
25     MR. HARMON: That did, Your Honor. And it now reflects

23

1  the -- the proposed preliminary order of forfeiture only
2  addresses items other than those that I just referenced to the
3  Court.
4         THE COURT: Mr. Duffey, have you reviewed that?
5         MR. DUFFEY: Yes, sir. Mr. Harmon is correct. We've
6  agreed to that.
7         THE COURT: You've agreed to that.
8         MR. DUFFEY: Yes, sir.
9         THE COURT: All right. That motion is granted, and the
10 forfeiture of the items not in the bill of particulars but the
11 items listed in the government's motion for preliminary
12 forfeiture will be included in the judgment.
13        MR. HARMON: Thank you, Your Honor.
14        THE COURT: The sentence will now be stated, but you
15 will have a final chance to make legal objections before the
16 sentence is imposed.
17        As I've stated earlier, I have evaluated the
18 reasonableness of this case through the lens of Section 3553(a)
19 of 18 U.S.C. Having done so, it's the order, judgment, and
20 decree of the Court that the defendant is committed to the
21 custody of the Federal Bureau of Prisons for a term of 108
22 months, which term the Court determines to be reasonable. The
23 Court recommends that you be designated to a facility where sex
24 offender treatment is available, where your physical health
25 needs, where your -- and where your physical health needs can be

24

1  addressed.
2         Upon release from imprisonment, you shall be placed on
3  supervised release for a term of life. This term consists of
4  life terms on each count, such terms to run concurrently.
5  Within 72 hours of release from custody, you shall report to the
6  probation office in the district to which you are released.
7  While on supervised release, you shall comply with the mandatory
8  and standard conditions of supervised release on file with this
9  Court.
10        The Court also orders the following special
11 conditions. You shall cooperate in the collection of DNA. You
12 shall register as a sex offender as required by law. You shall
13 participate in a program approved by the United States Probation
14 Office for the treatment of monitoring of sex offenders. You
15 shall have no contact with children under the age of 18 and will
16 refrain from entering into any place where children normally
17 congregate without written approval of the Court. You shall not
18 possess any form of pornography, sexually stimulating, or
19 sexually oriented material depicting children under the age of
20 18. You shall not enter into any location where such
21 pornography or erotica can be accessed, obtained, or viewed.
22        You shall not possess or use any computer or any device
23 that can be accessed -- that can access the Internet except that
24 you may, with the approval of the probation officer, use a
25 computer in connection with authorized employment. You shall

25

1  consent to third-party disclosure of any employer or potential
2  employer concerning any computer-related restrictions that are
3  imposed on you.
4         You shall submit your person and any property, house,
5  residence, vehicle, papers, computer, or other electronic
6  communications or data storage devices or media and effects to
7  search at any time, with or without a warrant, by any law
8  enforcement or probation officer with reasonable suspicion
9  concerning a violation of a condition of supervised release or
10 unlawful conduct and by any probation officer in the lawful
11 discharge of the officer's supervision functions.
12        You shall pay to the U.S. District Court Clerk a
13 special assessment fee of $200, which is due immediately. The
14 Court finds that there is no identifiable victim who incurred a
15 financial loss as a result of this offense.
16        At this point, I must make a comment that I find no
17 identifiable victim who incurred a financial loss as a result of
18 this offense. As I've said earlier, it's been determined that
19 there are at least 70 victims in this case who are children.
20 Mr. Duffey is correct that this case is not a case where a
21 defendant persuaded a child to be a part of child pornography
22 directly or intimidated or touched a person, but pornography
23 such as I described earlier is only available because people buy
24 it and there's a market for it. And when there's a market for
25 it, it causes people to be willing to take little children and

26

1  cause them to be filmed in the type of activity that I've
2  described. If it were not for the market and for people like
3  the defendant here who would buy that type of pornography, it
4  wouldn't exist. Every one of those children in those pictures
5  are victims. So I want to be clear that my finding is only that
6  there is no identifiable victim who incurred a financial loss as
7  a result of this offense.
8         Mr. King, you are committed to the -- you are remanded
9  to the custody of the United States Marshal.
10        Now, are there any objections to the sentence or to the
11 manner in which the Court pronounced it? For example, do you
12 have any objections to the Court's ultimate findings of fact or
13 conclusions of law?
14        Mr. Duffey?
15        MR. DUFFEY: No, sir.
16        THE COURT: Mr. Schiff?
17        MR. SCHIFF: Yeah. For the record, the government
18 would object to the Court's imposition of 108 months rather than
19 the -- what the government contends is the statutory mandatory
20 minimum with respect to count three of the indictment.
21        THE COURT: All right. Now, pursuant to the plea
22 agreement, the right to appeal has been waived by the defendant
23 with these exceptions: the order, document number 59,
24 overruling defendant's objections to the magistrate judge's
25 report and recommendation and denying his motion to suppress --

27

1   that was document number 23, the motion was; the order, which is
2   document number 60, denying the defendant's second motion to
3   suppress, that motion being document number 52; the
4   determination that the conviction on count one constitutes --
5   well, I didn't make that determination.
6          So with those exceptions having to do with the motion
7   to suppress, the two motions to suppress, the right of appeal
8   has been waived; is that correct, Mr. Duffey?
9          MR. DUFFEY: Yes, sir. That was the only thing. We
10  had reserved the right to appeal the motions to suppress.
11         THE COURT: All right.
12         MR. DUFFEY: And I think we'd reserved the right if the
13  Court had ordered the enhancement, but the Court did not.
14         THE COURT: All right. And, of course, the government
15  has preserved its position that the enhancement does apply,
16  Mr. Schiff. Other than that, then, you agree that the defendant
17  has waived the right to appeal except for those two exceptions,
18  the exceptions involving the -- that the defendant has preserved
19  his right to appeal as to the motions to suppress?
20         MR. SCHIFF: Are you addressing me?
21         THE COURT: Yes.
22         MR. SCHIFF: Oh, yes. I'm sorry. Yes, Your Honor.
23  The Court has correctly stated the exceptions to the waiver of
24  appeal.
25         THE COURT: All right. Ms. Caple?

28

1          PROBATION OFFICER: I just wanted to make one
2   clarification for the record, that the sentences imposed are 108
3   months as to count one and 108 months as to count three, such
4   terms to run concurrently. We did not address the two separate
5   counts.
6          THE COURT: Yes. I should have included that. The
7   sentence of 108 months consists of 108 months on count one and
8   108 months on count three, which terms are to be served
9   consecutive -- concurrently. I'm sorry.
10         Thank you, Ms. Caple.
11         Then the sentence is ordered imposed as stated.
12         MR. SCHIFF: The government --
13         THE COURT: There's a motion by the government?
14         MR. SCHIFF: Yes. To dismiss count two of the
15  superseding indictment.
16         THE COURT: All right. The motion is granted, and
17  count two of the superseding indictment is dismissed.
18         Mr. King, you are committed to the custody of the
19  United States Marshal. Court is adjourned.
20         (Proceedings concluded at 3:13 p.m.)
21                    * * * * * * * * * *
22
23
24
25

29

COURT REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript
from the record of proceedings in the above-entitled matter.

This 17th day of April, 2007.


/s/ Risa L. Entrekin
Registered Diplomate Reporter
Certified Realtime Reporter
Official Court Reporter